## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CAROLYN LIVINGSTON<br>Individually and on Behalf of All<br>Similarly Situated<br>　　　Plaintiff,<br>v.<br><br>CLEAN CITY LTD. D/B/A PEACHES<br>OF ATLANTA and CORNELIUS L.<br>STEPHENS<br><br>　　　Defendants. | CIVIL ACTION FILE NO:<br>FLSA Collective Action<br>JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES AND JURY DEMAND

Plaintiffs CAROLYN LIVINGSTON by and through the undersigned counsel hereby files this Complaint against CLEAN CITY LTD D/B/A PEACHES OF ATLANTA ("Peaches"), a Georgia Company and Cornelius L. Stephens ("Stephens") and alleges as follows:

## **INTRODUCTION**

1.

This is an action brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Defendants violated the minimum wage and record keeping requirements of the FLSA. Plaintiff seeks unpaid wages, including "kick-backs,"

liquidated damages and reasonable attorneys' fees and costs.

2.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to the FLSA and 28 U.S.C. § 1331.

3.

Venue is proper under 28 U.S.C. § 1391 because a substantial part of events or omissions giving rise to this action occurred within the jurisdiction of this Court.

4.

## PARTIES

Plaintiff Carolyn Livingston ("Livingston") resides in this District and was a former employee of the Defendants, having been employed at Peaches from Winter 2018 to May 2021.

5.

The FLSA Class Members are all current and former exotic dancers who worked at Peaches located at 779 Ralph David Abernathy, Atlanta, GA, 30310, USA at any time starting three (3) years before this Complaint was filed, up to the present.

6.

Defendant CLEAN CITY LTD D/B/A PEACHES OF ATLANTA

("Peaches") is a Georgia Company with its principal place of business located at 779 Ralph David Abernathy Blvd, Atlanta, GA 30310. At all times mentioned herein, Peaches is/was an "employer", or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Peaches may be served via its agent for service of process, Debbie Snelling at 101 Weatherstone Drive Suite 820, Woodstock, GA, 30188.

7.

Defendant CORNELIUS STEPHENS, ("Stephens") owns and operates Peaches. Defendant Stephens acted directly or indirectly on behalf of Peaches and is an employer within the meaning of the FLSA. He can be served at 2646 Miriam Lane, Decatur, GA 30034.

8.

Defendants may be served under Rule 4 of the Federal Rules of Civil Procedure.

## **INTERSTATE COMMERCE**

9.

Plaintiffs, other entertainers and employees of Peaches were engaged in commerce or the production of goods in commerce as defined by the FLSA.

10.

"The Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 207(a) (1), requires

an employer to pay overtime compensation to an hourly worker if the employee can establish individual coverage or enterprise coverage." *Silver v. Dr. Neal Krouse, D.O., P.A.*, 06-60634-CIV, 2007 WL 4098879 *2 (S.D. Fla. Nov. 16, 2007) (citing *Thorne v. All Restoration Svcs., Inc.,* 448 F.3d 1264, 1265 (11th Cir.2006)). "To qualify for enterprise coverage, Defendants must 'ha[ve] employees engaged in commerce or in the production of goods for commerce, or [ ] ha[ve] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.'" *Id*. (citing 29 U.S.C. § 203(s)(1)(A)(i) and (ii)). "The phase 'engaged in commerce' is interpreted broadly and liberally." *Id*. (citing *Alonso v. Garcia*, 147 Fed. Appx. 815, 816 (11th Cir. 2005)).

11.

Peaches was an enterprise engaged in commerce.

12.

Peaches was an enterprise engaging in interstate commerce by having multiple employees regularly selling alcoholic beverages produced and shipped from outside of the State of Georgia, regularly serving foods produced and shipped from outside of the State of Georgia and having multiple employees regularly

processing out-of-state credit card sales in the furtherance of its business.

13.

Peaches had out of state customers who regularly frequented the club.

14.

Peaches had an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

15.

Peaches had two or more "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person." as defined in 29 U.S.C. § 203(s)(1)(A).

16.

**COMMON FACTUAL ALLEGATIONS**

Plaintiff brings this action pursuant to 29 U.S.C. § 216(b).

17.

During the three years prior to the filing of this complaint Defendants owned and operated Peaches of Atlanta located in Atlanta, Georgia.

18.

Peaches features nude female dancers.

19.

Defendants jointly owned, operated and managed Peaches and were all involved in the day-to-day operation of the Club.

20.

Defendants made the decision to misclassify the Plaintiff and other similarly situated dancers as independent contractors rather than employees, and not pay them the minimum wage.

21.

Defendants made the decision to require the Plaintiff and other similarly situated dancers pay certain fees and tip-outs each shift.

22.

Peaches directly and indirectly controlled dancers' work schedules by requiring them to work a minimum number of shifts and hours per shift or pay a monetary penalty for failure to do so.

23.

The Defendants and Peaches' house moms and managers directly and indirectly controlled the appearance and dress of dancers at Peaches.

24.

The Defendants and Peaches' house moms and managers had the authority to

require dancers to change their appearance and attire at work.

25.

The Defendants and Peaches' house moms and managers required dancers to change their appearance and attire at work.

26.

The Defendants and Peaches' managers had the authority to suspend and discipline dancers.

27.

The Defendants and Peaches' managers directly and indirectly supervised dancers on a day-today basis.

28.

The Defendants and Peaches required dancers to attend meetings to discuss workplace issues.

29.

The Defendants and Peaches used mandatory dancer meetings to discuss problems with dancer dress, hair, makeup, weight, and appearance, club promotional efforts and other work-related issues.

30.

Defendants and Peaches made all advertising, marketing and promotional decisions regarding the club and paid all costs associated with advertising marketing and promoting the club.

31.

Defendants and Peaches required customers to pay a "door fee" to enter the business and thus had ultimate authority as to which individuals were allowed to enter the club as customers.

32.

Defendants and Peaches' managers and house moms had the discretion not to permit a dancer to perform if she arrived at a scheduled shift after a certain time.

33.

Peaches' DJ's have given dancers instructions to report to the stage and/or remove clothing while on stage.

34.

Peaches' DJ's called dancers to dance on stage on a set rotation established by the dancers' time of arrival.

35.

Peaches enforced a mandatory check-out process for the club's dancers, which included the payment of various fees to the club and its managers, house moms, and

DJs. It also included a mandatory breathalyzer test to test the alcohol intake of each dancer.  The dancers were also charged $5.00 per test.

36.

Peaches maintained and enforced written and unwritten rules of conduct for dancers.

37.

The duties of Peaches' management included ensuring that dancers complied with club rules and policies.

38.

Peaches provided all stages used for dancer performances at the Club.

39.

 Peaches provided poles used for dancer performances at the club.

40.

Peaches was responsible for day-to-day purchases of liquor for sale at the Club.

41.

Peaches did not require the club's dancers to have prior experience as dancers or any formal or special training.

42.

When an individual wanted to work as a dancer at the Peaches a house mom and manager generally performed a "body check" to determine if the individual's body was suitable for performing at the club.

43.

Peaches required Plaintiffs to work a minimum number of days per week, including a minimum number of "slow days," or pay fines.

44.

Peaches advertised its business using pictures of scantily clad women.

45.

The presence of nude dancers was integral to Peaches' business success and operations.

46.

Plaintiff did not have her own business entities or employees associated with her dance work, and the job required no management of other employees.

47.

Plaintiffs and similarly situated dancers were "employees" as that term is used in the FLSA, rather than independent contractors, as a matter of economic reality.

48.

Defendants was Plaintiff's and similarly situated dancers' "employers" as

defined in FLSA § 3(d), 29 U.S.C. § 203(d).

49.

Plaintiff and similarly situated dancers were not exempt from the minimum wage or overtime requirements of the FLSA.

50.

Defendants paid no wages or other compensation to Plaintiffs.

51.

Plaintiff and similarly situated dancers worked entirely for tips paid by the Peaches' customers.

52.

Defendants intentionally classified Plaintiffs as independent contractors.

53.

## COLLECTIVE ACTION ALLEGATIONS

As alleged herein, Defendants are liable under the FLSA for willfully failing to properly compensate Plaintiffs and all other similarly situated current and former adult entertainers employed by Defendants during the three-year period prior to commencement of this action, and as such, notice should be sent to past and present adult entertainers employed by Defendants during the three year period prior to initiation of this action, pursuant to 29 U.S.C. § 216(b).

54.

As alleged herein, Defendants deprived Plaintiffs and other similarly situated adult entertainers of compensation to which they are entitled through the following singular practices, decisions or plans:

(a) Requiring adult entertainers to work without compensation;

(b) Requiring adult entertainers to perform work during times for which they could not receive tips without compensation;

(c) Refusing to compensate adult entertainers one- and one-half times minimum wage when their total hours worked exceeded 40 hours;

(d) Requiring adult entertainers to share tips with non-tipped employees; and

(e) Requiring adult entertainers to pay fees for the right to work.

55.

Based thereon, Defendants have repeatedly and intentionally engaged in a similar practice, commonly and typically applied to the class of adult entertainers, of improperly depriving compensation to which such adult entertainers are entitled under the FLSA.

56.

Questions that are common among the FLSA Collective Action members include, but are not limited to:

(a) whether Defendants have and continue to unlawfully refuse to pay adult entertainers proper compensation, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, for all work performed;

(b) whether Defendants have and continue to unlawfully refuse to pay adult entertainers proper overtime compensation, in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, through the aforementioned policies and practices;

(c) whether Defendants' failure to pay such proper compensation is willful within the meaning of the FLSA.

57.

There are numerous similarly situated current and former adult entertainers employed by Defendants in venues owned and/or operated who have been subject to the same policies and practices alleged herein, in violation of the FLSA, and who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to Defendants and are readily identifiable by Defendants' records.

58.

Plaintiffs, on behalf of themselves and other similarly situated current and former employees, bring this collective action against Defendants under the FLSA, 29 U.S.C. § 201, *et seq.* for failure to pay minimum wage and overtime

compensation.

59.

Plaintiffs and others similarly situated (the "FLSA Collective"), are individuals who are current and former adult entertainer employees of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

60.

## COUNT ONE

## VIOLATION OF 29 U.S.C. §§ 206 AND 215

Paragraphs 1 through 61 are incorporated herein by this reference.

61.

Plaintiff and similarly situated dancers were employees covered by the FLSA and entitled to the minimum wage protections set forth in FLSA § 6(a), 29 U.S.C. § 206(a).

62.

Defendants failed to compensate Plaintiff and similarly situated dancers at an hourly rate above or equal to the minimum wage.

63.

Defendants willfully failed to compensate Plaintiff and similarly situated dancers at an hourly rate above or equal to the minimum wage.

64.

Plaintiff and similarly situated dancers are entitled to payment of their minimum wages in an amount to be determined at trial, in accordance with FLSA § 16(b), 29 U.S.C. § 216(b).

65.

Defendants' requirement that Plaintiff and similarly situated dancers pay fees and fines to Peaches and its managers, house moms, and DJs violated the "free and clear" requirement of 29 CFR 531.35.

66.

Plaintiff and similarly situated dancers are entitled to receive all unpaid minimum wages from Defendants for the hours that they worked.

67.

Plaintiff and similarly situated dancers are entitled to recover from Defendants as part of their wage loss, all fees, tip-outs and fines that they were required to pay in order to work at the Peaches.

68.

Defendants' violation of the FLSA was willful. In other words, Defendants knew or showed reckless disregard for the fact that their wage and "pay to work" policies violated the FLSA.

69.

As a result of Defendants' willful underpayment of minimum wages as alleged above, Plaintiffs are entitled to liquidated damages in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

70.

Defendants failed to act in good faith in implementing and enforcing their wage and "pay to work" policies and their implementation and enforcement of these policies were unreasonable.

71.

Defendants violated the record keeping requirements of the FLSA.

72.

As a result of its underpayment of minimum wages as alleged above, Defendants are jointly and severally liable to Plaintiff for her litigation costs, including their reasonable attorney's fees, in accordance with FLSA §16(b), 29 U.S.C. § 216(b).

73.

## COUNT TWO:

## REIMBURSEMENT OF HOUSE FEES AND TIPS

Plaintiff herein incorporate paragraphs 1-61 above by reference as if fully set forth fully herein.

74.

Defendants further violated the FLSA by requiring the Plaintiff and similarly and similar situated exotic dancers to pay house fees and tip outs as a condition of employment.

75.

Defendants' house fee and tip out requirement benefitted the Defendants and caused the Plaintiffs' and similar situated exotic dancers potential wages to fall well below the minimum wage.

76.

Pursuant to the FLSA, specifically 29 CFR § 531.35, wages must be paid "free and clear."

77.

29 CFR § 531.35, states in part "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to

the employee."

78.

The house fees paid by the Plaintiff and similarly situated exotic dancers constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

79.

The tip-outs paid by the Plaintiff and similarly situated exotic dancers to the "house mom" the DJ and security constitute "illegal kickbacks" pursuant to 29 CFR § 531.35.

80.

These sums must be returned to the Plaintiffs and similarly situated exotic dancers to bring Defendants' minimum wage obligations to the Plaintiffs and similarly situated exotic dancers consisted with the requirements of the FLSA.

81.

Defendants' policy of house fees and tip outs were not recorded in the federal and state tax returns or gross receipts.

82.

Defendants did not record the number of fees for table and lap dances performed by the Plaintiffs and similarly situated exotic dancers during the duration of Plaintiffs employment.

83.

Defendants are not entitled to a set off or tip credit for sums earned by the

Plaintiffs and similarly situated exotic dancers.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court:

a. Enter a declaratory judgment or order finding that (i) Plaintiff is an
   "employee" under the FLSA; (ii) Defendants are "employers" as that term
   is defined under the FLSA; and (iii) Defendants violated the minimum
   wage and record keeping provisions of the FLSA;

b. Award Plaintiffs an amount to be determined at trial against Defendants
   for unpaid minimum wages, including unlawful deductions due under the
   FLSA;

c. Award Plaintiffs reimbursement of all tip-outs, house fees, and all other
   sums unlawfully paid to the Peaches;

d. Award Plaintiff liquidated damages against Defendants in the same
   amount as their unpaid minimum wages;

e. Award Plaintiff prejudgment interest on all amounts owed;

f. Award Plaintiff her reasonable attorney's fees and costs of litigation under
   the FLSA; and

g.      Award any and such other relief this Court deems just, equitable and

proper.

/s/ Mutepe Akemon
Mutepe Akemon
GA Bar No. 434260
mutepe.akemon@richardslegal.com

**The Richards Law Group, LLC**
P.O. Box 360295
Decatur, GA 30036
Telephone: 404-289-6816
Facsimile:   404-795-0727
*Counsel for Plaintiff*